# In the Matter of the Dissolution of the Marriage of WAGNER, *Appellant,* and WAGNER, *Respondent.*
## (No. 397-328, CA 5358)

552 P2d 276

*Carl E. Wilcox,* Oregon City, argued the cause and filed the brief for appellant.

*Dwight L. Schwab,* Portland, argued the cause for respondent. With him on the brief were Schwab, Burdick & Hilton, Portland.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

## LANGTRY, J.

Wife appeals from the money and property aspects of a marriage-dissolution decree. The husband was 48 and wife 41 years of age at the time of decree. They had been married for 21 years and had four children, the two youngest still at home with wife. One, 11 years old, has emotional or slow learning problems, but regularly attends public school. Wife was given custody of these two children, and awarded $250 and $200 per month for their support, respectively, plus $400 per month for her support, the latter limited to four years.

Husband had been the recipient from his family of extensive industrial interests at or about the time a prosperous mixermobile and scoopmobile manufacturing family-owned company had been sold to a larger corporation. He went into a similar individually owned business with some of the proceeds, acquired an apartment house as an investment, and had other extensive property as well, largely from his family connections. He also had an outstanding $271,000 bank loan, security for which was some $346,000 worth of American Standard, Inc., stock, the dividends from which pays the loan interest. He has a potential income tax liability of about $200,000, partly apparently because he used the apartment building as a depreciation tax shelter and the wife received the apartments in the decree. The decree left him the large assets and debts, and his business which has a value of at least $300,000. He owed other extensive indebtedness. As noted, wife was awarded the apartments, valued at about $180,000 and subject to about $60,000 indebtedness. There is a sharp difference in the values the parties put on their assets and liabilities.

The evidence indicates it is reasonable to assume husband's net value after the decree is about $250,000, but much in this regard depends on what his income tax liability may be. Wife's net, including a $20,000 cash award, the apartments, a home, furnishings,

vehicle and other valuable personalty, comes out around $180,000. Wife contends she should have much more of the property that was awarded to husband. In view of the sharp conflicts in testimony about property and business values and debts and contingent liabilities, and in consideration of the primary source of the accumulated wealth, we conclude that we can make a no more just and equitable division of the property than did the trial judge.

■ Wife also contends that she should have been awarded more substantial monthly support payments than the $400 for four years which was awarded. We agree with her argument that she, with the children she has to care for, cannot expect to earn substantially in the future. And, she has become accustomed to a rather high standard of living. These factors militate toward permanent support for her, and in fairly substantial increments.

It seems obvious, from remarks made by the trial judge throughout the 600-page transcript, that he was rather impressed, from evidence about extramarital travelings of wife, that she will soon remarry and the support payments will in any event terminate. For instance, at one point he said:

"* * * [I]n spite of the no-fault procedure, the question is obviously life styles and monetary demands. She has asked for money for a life style requiring $26,400 spendable money per year. He has indicated that she should have substantially less and that his 18-year old child should work after [husband's] reporting last year a taxable income of $55,000.

"Now, the Court has competitive demands of gross self-indulgence."

And:

"She is going to be at home, so she is not going to be employed and has already undertaken [what] sociologists call tentative new pair formation. The Court has to assume that she has known about the general character of her future, and the Court would be an idiot were it not

to suspect that she plans, instead of going into business, marrying if some income stability isn't met * * *."

What we have read in the transcript leaves us unable to disagree with the trial judge's observations. Nevertheless, if she does not remarry within four years, what she may expect to net from the apartment rentals (this was estimated in evidence at about $6,000 per year after mortgage payments, taxes and upkeep) and from the $20,000 cash settlement (which is payable at $2,500 per year plus interest) will probably not come near supporting her in anything like her accustomed fashion after four years have passed. She should be given some additional assurance of a reasonable income after that time if she does not remarry. *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, Sup Ct *review denied* (1974). Therefore, we modify by making the $400 per month for her support $100 per month after four years, or until remarriage or death. If need for more is apparent after four years, further proceedings may be instituted in the regular manner therefor. In other respects the decree is affirmed.

Affirmed as modified.